UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO: 17-00072** |
| **ROGER HAMMOND** | **SECTION: "R" (4)** |

### ORDER

Before the Court is Defendant Roger Hammond's **Motion for Production of *Brady* Material and For Written Confirmation of Government's Inspection of All Locations Where *Brady* Material May Exist (R. Doc. 42)**. The motion is opposed. R. Doc. 46. The motion was set for submission on December 13, 2017, and was heard on the briefs.

### I. Background

The indictment in this case alleges that Defendant Roger Hammond, Jr. did knowingly and intentionally combine, conspire, confederate, and agree with other persons known and unknown to distribute and possess with intent to distribute fifty (50) grams or more of a mixture or substance containing a detectable amount of methamphetamine. It also alleges that on or about April 5, 2017, Roger Hammond, Jr. did knowingly and intentionally distribute a quantity of methamphetamine. R. Doc. 17.

The complaint alleges that Roger Hammond, Jr., a known methamphetamine trafficker, was witnessed conducting what appeared to be a hand-to-hand narcotics transaction. Hammond was pulled over for an illegal window tint as well as based on agents witnessing a suspected drug transaction. Hammond consented to a search of his vehicle and agents also obtained a search warrant for the vehicle. Hammond also informed the agents that there were several grams of methamphetamine located in the vehicle which were seized. An audio and video interview was conducted with Hammond post-*Miranda* warnings and after he waived his right to speak with an

attorney. Hammond stated that he purchased two ounces of methamphetamine on April 5, 2017, which he delivered to the co-defendant in the case who was also pulled over after the observed hand-to-hand transaction and admitted to purchasing two ounces of methamphetamine from Hammond. R. Doc. 1.

The Defendant filed the instant motion seeking an order from the Court requiring the Government to produce all *Brady* material described in his memorandum of support, broken into 15 parts with multiple parts having sub-parts, as well as requiring the Government to provide a written confirmation that it has complied with its duty to investigate all locations where *Brady* material may exist. R. Doc. 42.

The Government opposes the motion. R. Doc. 46. The Government contends that: (1) it is fully aware of its duty to produce material pursuant to federal Rule of Criminal Procedure 16 and to identify and produce exculpatory evidence that is, or reasonably should be, in its possession; (2) that it will produce any Rule 16 materials and exculpatory materials in accordance with *Brady*; (3) it is aware of its obligation under *Giglio* and will provide that information no less than 48 hours prior to trial; (5) has operated in good faith and turned over more materials than required by Rule 16; and (6) the defendant's motion attempts to compel materials not required by Rule 16 or *Brady*.

**II.    Law and Analysis**

Federal Rule of Criminal Procedure ("Rule") 16 provides that the government must disclose the defendant's oral statement; the defendant's written or recorded statement; and the defendant's prior record. Fed. R. Crim. P. 16(a)(1)(A)-(B), (D). The government must also allow a defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item

was obtained from or belongs to the defendant. Fed. R. Crim P. 16(a)(1)(E). The government must allow the defendant to inspect any physical or mental examination and any scientific test or experiment under certain conditions. Fed. R. Crim P. 16(a)(1)(F). Lastly, the government must produce to the defendant a written summary of any expert testimony that it intends to use in its case-in-chief at trial. Fed. R. Crim P. 16(a)(1)(G).

Rule 16 also provides that certain information is not subject to disclosure. The Rule states that except as permitted by Rule 16(a)(1)(A)-D, (F), and (G), "it does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent made in connection with investigating or prosecuting the case. Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C § 3500." Fed. R. Crim. P. 16(a)(2). In addition, Rule 16 does not apply to the discovery of inspection of a grand jury's recorded proceedings, except as provided in Rules 6, 12(h), 16(a)(1), and 26.2. Fed. R. Crim P. 16(a)(3).

*Brady* material is any information in the possession of the government that relates to guilt or punishment and that tends to help the defense by either bolstering the defense case or impeaching potential prosecution witnesses. *Brady v. Maryland,* 373 U.S. 83, 87 (1963). This includes *Giglio* evidence that would materially impeach a government witness, *e.g.,* by showing bias or interest. *See Giglio v. United States,* 405 U.S. 150, 154 (1972); *United States v. Bagley,* 473 U.S. 667, 676 (1985). It is also self-evident that Brady and/or Giglio items are "material to preparing the defense" under the Rule 16 standard and that the government's obligation to disclose such materials is absolute.

The government generally has no obligation to turn over any exculpatory material of which the defense is already aware. *See Lovitt v. True,* 403 F.3d 171, 185 (4th Cir. 2005) ("*Brady* only

applies when evidence is known to the prosecution but unknown to the defense") (quoting *United States v. Agurs,* 427 U.S. 97, 103 (1976)). Furthermore, the government has no obligation if the information is available to the defendant through the exercise of diligence. *See United States v. Willis,* 277 F.3d 1026, 1034 (8th Cir. 2002); *Rector v. Johnson,* 120 F.3d 551, 558 (5th Cir. 1997) ("State has no obligation to point the defense toward potentially exculpatory evidence when that evidence is either in the possession of the defendant or can be discovered by exercising due diligence."); *United States v. Serfling,* 504 F.3d 672, 678–79 (7th Cir. 2007) (no *Brady* violation when government made documents available for defendant's review).

Furthermore, there is no requirement that *Brady* or *Giglio* material be produced in pre-trial discovery. *United States v. Davis,* Co. Cr. A. 01–282, 2003 WL 1825602, *2 (E.D. La. Apr. 8, 2003). The Fifth Circuit has stated, "[ ] *Brady* is not a discovery rule, but a rule of fairness and minimum prosecutorial obligation." *United States v. Beasley,* 576 F.2d 626, 630 (5th Cir. 1978) (citing *United States v. Agurs,* 427 U.S. 97, 107 (1976)). Therefore, *Brady* "is not a pretrial remedy." *See United States v. Garrett,* 238 F.3d 293, 303 (5th Cir. 2000) (Fish, J., concurring) (quoting *United States v. Scott,* 524 F.2d 465, 467 (5th Cir. 1975)). Rather, a *Brady* violation becomes a concern for courts only after trial, when courts are able to determine whether a nondisclosure deprived a defendant of a fair trial. *See id.* at 303–04 (citing cases). The Fifth Circuit has therefore held that a "prosecutor's compliance with the Jencks Act provided timely disclosures under *Brady.*" *United States v. Campagnuolo,* 592 F.2d 852, 860 (5th Cir. 1979) (citing cases). The Fifth Circuit has also held that there was no prejudice to the defendant when the government disclosed *Brady* information to the defendant during its case-in-chief. *See United States v. Neal,* 27 F.3d 1035, 1050 (5th Cir. 1994). Lastly, the Fifth Circuit has held that there is no violation of *Giglio* as long as the evidence is disclosed to the defense before the end of trial. *See Hill v. Black,* 887 F.2d 513, 517 (5th Cir. 1989), *vacated on other grounds by* 198 U.S. 801 (1990); *see also*

4

*United States v. Martinez–Perez,* 941 F.2d 295, 301 (5th Cir. 1991) (reaffirming the *Giglio* aspect of *Hill*). Therefore, if the government produces *Brady* material to defendant as it receives such material, no violation of *Brady* occurs.

The issue here is therefore not one of suppression, but rather of timing. The Government is its opposition indicates that it is aware of the obligation imposed both by Rule 16 as well as the obligation to produce any exculpatory information that is, or reasonably should be, in its possession. The Government states that as far as it is aware and of any such exculpatory evidence and the prosecution team is reviewing the file and will turn over any materials pursuant to Rule 16 or *Brady* materials as required by law.

The Government further indicates that it is the standard practice in this district to provide *Brady* materials not less than 48-hours prior to trial. It further proposes that it will turn over *Brady* material to the Defendant as it receives and recognizes such material to be exculpatory *Brady* material. The Government further indicates that it will produce impeaching *Giglio* materials three calendar days before the trial, as is the custom in this district. Finally, the Government indicates that it has provided information beyond that and in advance of the timetable required by the Jencks Act.

The Government also represents that it has provided the reports of officers who would be witnesses and allowed defense counsel to inspect all the evidence in its possession. In addition, the Government states that it has contacted the Department of Justice and has been advised that the DOJ has not found any exculpatory evidence that it is required to provide under *Brady* and the DOJ is aware of its obligation under *Brady* and will provide that information as it is discovered.

This Court sees no reason as to why it should issue an order deviating from the standard practice in this district. However, the Court notes that the Government should err on the side of caution and provide any material that is *arguably* covered by *Brady*. The Court further concludes

5

that the Government, given this direction, is fully capable of sifting through the individual requests in the motion to determine whether such requests properly seek *Brady* material.

Finally, the motion seeks to have the Court issue and order requiring the government provide a written certification that it has complied with its duty to investigate all locations where *Brady* material may exist, including the locations specified in the motion. The Defendant, however, cites no case law or precedent in this circuit or elsewhere requiring a written certification that the Government has searched every location for exculpatory material. Further, this Court has found no precedent requiring the Government to provide this written certification either.

The Government indicates that it is aware of its obligation to discover any *Brady* materials that are, or reasonably should be, in its possession and will produce that material as it is discovered. Therefore, the request for a written certification is denied.

### III. Conclusion

Accordingly,

**IT IS ORDERED** that the Defendant Roger Hammond's **Motion for Production of *Brady* Material and For Written Confirmation of Government's Inspection of All Locations Where *Brady* Material May Exist (R. Doc. 42)** is **DENIED.**

New Orleans, Louisiana, this 18th day of January 2018.

**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**